UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
SAMSUNG FIRE & MARINE INSURANCE
COMPANY, LTD,

                              **Case No.: 20-cv-04809-MKV**

        Plaintiff

    – against –

LIBERTY MUTUAL FIRE INSURANCE COMPANY,

        Defendant.

------------------------------------------------------------------X


**MEMORANDUM OF LAW ON BEHALF OF PLAINTIFF
SAMSUNG FIRE & MARINE INSURANCE COMPANY, LTD
<u>IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT</u>**


                                L'ABBATE, BALKAN, COLAVITA
                                  & CONTINI, L.L.P.
                                Attorneys for Plaintiff
                                Samsung Fire & Marine Insurance
                                Company, Ltd.
                                3 Huntington Quadrangle, Suite 102-S
                                Melville, New York 11747
                                Tel.:  (516) 294-8844
                                jmckenna@lbcclaw.com

Of Counsel:
*John D. McKenna*

## <u>TABLE OF CONTENTS</u>

<u>Page(s)</u>

TABLE OF AUTHORITIES ..................................................................................ii, iii

PRELIMINARY STATEMENT ...................................................................................1

STATEMENT OF FACTS AND PROCEDURAL BACKGROUND..............................2

    A.  The Underlying Accident and Litigation ........................................................2
    B.  The Samsung Policy ......................................................................................4
    C.  The Liberty Policy .........................................................................................6
    D.  Samsung's Tender and Liberty's Disclaimer of Coverage ............................8
    E.  The Instant Action.........................................................................................8

ARGUMENT ...........................................................................................................9

    <u>POINT I</u>

    SAMSUNG IS ENTITLED TO SUMMARY JUDGMENT
    DECLARING THAT LIBERTY HAD A DUTY TO DEFEND
    AND INDEMNIFY THE UNDERLYING DEFENDANTS IN
    CONNECTION WITH THE UNDERLYING ACTION ......................................9

    A.  Legal Standard ............................................................................................9

    B.  Darretta Sought Damages In Connection With
        An Accident Which Resulted From The Use Of
        A Covered Automobile ...............................................................................10

    C.  The Underlying Defendants Qualify As Insureds
        Under The Liberty Policy Based Upon Their Use
        Of The UPS Truck .......................................................................................12

    D.  The Underlying Defendants Also Qualify As Insureds
        Because Their Alleged Liability Is For The Conduct
        Of Another Insured ......................................................................................13

    <u>POINT II</u>

    THE COVERAGE AFFORDED TO THE UNDERLYING
    DEFENDANTS UNDER THE LIBERTY POLICY IS
    PRIMARY TO SAMSUNG'S CGL POLICY ....................................................14

CONCLUSION.......................................................................................................18

# **TABLE OF AUTHORITIES**

Page(s)

Cases

*Argentina v. Emery World Wide Delivery Corp.*,
    93 N.Y.2d 554, 693 N.Y.S.2d 493 (1999) ............................................................... 11

*Bovis Lend Lease LMB, Inc. v. Great Am. Ins. Co.*,
    53 A.D.3d 140, 855 N.Y.S.2d 459 (1st Dep't 2008) ................................................ 17

*Celotex Corp. v. Catrett*,
    477 U.S. 317, 106 S. Ct. 2548 (1986) ....................................................................... 9

*Consol. Edison Co. of New York v. Allstate Ins. Co.*,
    98 N.Y.2d 208 (2002) .............................................................................................. 15

*Cont'l Cas. Co. v. Rapid-Am. Corp.*,
    80 N.Y.2d 640, 593 N.Y.S.2d 966 (1993) ............................................................... 14

*Cosmopolitan Mut. Ins. Co. v. Baltimore & Ohio R.R.*,
    18 A.D.2d 460, 240 N.Y.S.2d 88 (1st Dep't 1963) ................................................. 11

*Dairylea Co-op., Inc. v. Rossal*,
    64 N.Y.2d 1, 483 N.Y.S.2d 1001 (1984) ................................................................. 13

*Eagle Ins. Co. v. Butts*,
    269 A.D.2d 558, 707 N.Y.S.2d 115 (2d Dep't 2000) ............................................... 11

*Great Northern Ins. Co. v. Mt. Vernon Fire Ins. Co.*,
    92 N.Y.2d 682, 685 N.Y.S.2d 411 (1999) .......................................................... 14, 15

*Hartford Underwriters Ins. Co. v. Hanover Ins. Co.*,
    122 F. Supp. 3d 143 (S.D.N.Y. 2015) ...................................................................... 17

*Hartford Underwriters Ins. Co. v. Hanover Ins. Co.*,
    653 F. App'x 66 (2d Cir. 2016) ................................................................................ 17

*Hertz Corp. v. Gov't Employees Ins. Co.*,
    250 A.D.2d 181, 683 N.Y.S.2d 483 (1st Dep't 1998) .............................................. 12

*Lightfoot v. Union Carbide Corp.*,
    110 F.3d 898 (2d Cir. 1997) ...................................................................................... 9

*Matsushita Electric Industrial Co. v. Zenith Radio Corp.*,
    475 U.S. 574, 106 S. Ct. 1348 (1986) ........................................................ 9

*Paul M. Maint., Inc. v. Transcontinental Ins. Co.*,
    300 A.D.2d 209, 755 N.Y.S.2d 3 (1st Dept. 2002) ...................... 11, 13, 14

*Spoor-Lasher Co. v. Aetna Cas. & Sur. Co.*,
    39 N.Y.2d 875, 386 N.Y.S.2d 221 (1976) ............................................... 14

*Wagman v. American Fidelity & Cas. Co.*,
    304 N.Y. 490, 109 N.E.2d 592 (1952) ..................................................... 12

*Wausau Underwriters Ins. Co. v. St. Barnabas Hosp.*,
    145 A.D.2d 314, 534 N.Y.S.2d 982 (1st Dep't 1988) ............................. 11

<u>Statutes</u>
Labor Law § 240 ............................................................................................. 14

<u>Rules</u>
Fed. R. Civ. P. 56 ........................................................................................ 1, 9
Federal Rule of Civil Procedure 56(c)(2) ....................................................... 9

## PRELIMINARY STATEMENT

Plaintiff, Samsung Fire & Marine Insurance Company ("Samsung"), submits this Memorandum of Law pursuant to Fed. R. Civ. P. 56 in support of its Motion for Summary Judgment seeking (i) a declaration that Defendant Liberty Mutual Fire Insurance Company ("Liberty Mutual" or "Liberty") owed liability insurance coverage to Ralph & Flatlands Associates, LLC, Telco of Ralph Avenue, Inc., T&E Stores, Inc., Ralph Avenue Operating Corp., and Flatlands Shopping Center Associates (collectively, the "Underlying Defendants") in connection with an underlying lawsuit styled *Joseph C. Darretta v. Ralph & Flatlands Associates, LLC, Telco of Ralph Avenue, Inc., T&E Stores, Inc., Ralph Avenue Operating Corp., Flatlands Shopping Center Associates*, which was litigated in the Supreme Court of New York, Kings County (Index No. 513977/2016) (the "Underlying Action"); and (ii) an order requiring Liberty to reimburse Samsung for the amounts it incurred in defending and indemnifying the Underlying Defendants in the Underlying Action.

This action arises out of an alleged July 29, 2015 accident wherein the underlying plaintiff, Joseph Darretta ("Darretta") purports to have been injured while making a delivery at the premises located at 1910 Ralph Avenue, Brooklyn, New York. Samsung seeks coverage, on a primary and non-contributory basis, for the Underlying Defendants as insureds on the Commercial Auto Liability Insurance Policy that Liberty issued to United Parcel Service ("UPS") because the Underlying Defendants fall within the definition of "insured" in the Liberty Policy. More specifically, as recipients of packages delivered by Darretta in his capacity as a UPS employee, they were permissive users of the truck. Additionally, their alleged liability arose out of conduct on the part of an insured on the Liberty Policy (Darretta) while he was making a delivery in his capacity as a UPS driver.

Accordingly, it is respectfully submitted that this Court should grant summary judgment in Samsung's favor (i) declaring that Defendant Liberty owed liability insurance coverage to the Underlying Defendants in connection with the Underlying Action; and (ii) ordering Liberty to reimburse Samsung for the amounts it incurred in defending and indemnifying the Underlying Defendants in the Underlying Action.

## STATEMENT OF FACTS AND PROCEDURAL BACKGROUND

### (A)     The Underlying Accident and Litigation

This matter arises out of an alleged accident which took place on July 29, 2015, when underlying plaintiff Darretta, a UPS employee, purports to have been injured while making a delivery on behalf of UPS at the Telco store located at 1910 Ralph Avenue, Brooklyn, New York. (May 6, 2021 Declaration of John D. McKenna in Support of Samsung's Motion for Summary Judgment, hereinafter the "McKenna Dec.," Ex. A at 21:23-22:5; 42:19-45:5; 50:15-51:11 (Combined Rule 56.1 Statement, hereinafter referred to as "56.1," at ¶¶ 43-44); McKenna Dec., Ex. B at ¶ 13 (56.1 at ¶ 39)).

On August 11, 2016, Darretta commenced the Underlying Action, then-styled *Joseph C. Darretta v. Ralph & Flatlands Associates, LLC, Telco of Ralph Avenue, Inc., T&E Stores, Inc.*, in the Supreme Court of New York, Kings County (Index No. 513977/2016).  (McKenna Dec., Ex. C; 56.1 at ¶¶ 19-20.)  On November 2, 2016, Darretta filed an amended complaint, wherein he added Ralph Avenue Operating Corp. and Flatlands Shopping Center Associates as defendants. (McKenna Dec., Ex. D; 56.1 at ¶ 23.)

Darretta testified during his deposition in the Underlying Action that, on the day of his alleged accident, he was employed as a package driver for UPS (McKenna Dec., Ex. A at 21:23-22:5) and was making a delivery to Telco (*Id.* at 43:6-43:18; 45:3-45:5; 56.1 at ¶ 43).  Darretta

further testified regarding the procedure he followed when making deliveries to the Telco store: first, he would pull up to the back of the store, get out of the truck, ring the doorbell, and wait for a Telco employee to open a gate. He would then back the UPS truck up to a metal grate leading to the back door of the store, get out of the truck, open the back door of the truck, and "start feeding them packages and they take it and it goes down a conveyer belt." (*Id.* at 50:15-51:11; 56.1 at ¶ 44.) On the day of the alleged accident, he parked the UPS truck he was driving and felt something pop in his knee as he walked to the back of the truck to make the delivery to Telco. (*Id.* at 44:8-44:13.)

Yvonne Gafa, a department manager at the Telco store, was also deposed in the Underlying Action. Ms. Gafa testified, among other things, regarding the job of Telco's receiving manager and the procedure by which Telco received its deliveries. In 2015, at the time of Darretta's alleged accident, there was a loading dock area at the back of the store where delivery trucks could back in, off-load, and on-load. Delivery drivers would ring a bell; the receiving manager or another employee would let the truck in. Delivery trucks would pull into a loading dock, and Telco employees would take the items being delivered into the store. (McKenna Dec., Ex. E at 11:11-14:17; 21:3-22:3; 56.1 at ¶ 45.) Ms. Gafa further testified that T&E Stores, Inc. was the actual owner of the store, and that Telco was the name of the store itself. (*Id.* at 17:24-18:7; 56.1 at ¶ 83.)

By decision and order dated October 2, 2019, the court in the Underlying Action granted summary judgment in favor of Ralph & Flatlands Associates, LLC and Flatlands Shopping Center Associates. (McKenna Dec., Ex. F; 56.1 at ¶ 46.) In January 2020, Samsung settled the Underlying Action, on behalf of the remaining defendants, for $850,000. (McKenna Dec., Exs. G and H; 56.1 ¶ at 54.)

### (B)    The Samsung Policy

Samsung issued Commercial Package Policy No. CPP 0000443 03 to T&E Stores, Inc. for the period October 1, 2014 to October 1, 2015 (the "Samsung Policy").  (McKenna Dec., Ex. I; 56.1 at ¶ 8.)  Among other things, the Samsung Policy provides Commercial General Liability Coverage with a $1 million limit each occurrence ($2 million general aggregate limit).

The Samsung Policy contains an "other insurance" provision which provides:

> 4.    Other Insurance
>
>> If other valid and collectible insurance is available to the insured for a loss we cover under Coverages A or B of this Coverage Part, our obligations are limited as follows:
>>
>>> a.    Primary Insurance
>>>
>>>> This insurance is primary except when Paragraph b. below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in Paragraph c. below.
>>>
>>> b.    Excess Insurance
>>>
>>>> (1)    This insurance is excess over:
>>>>
>>>>> (a)    Any of the other insurance, whether primary, excess, contingent or on any other basis:
>>>>>
>>>>> *   *   *
>>>>>
>>>>> (iv)    If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion g. of Section I – Coverage A – Bodily Injury And Property Damage Liability.

4

\* \* \*

(2)    When this insurance is excess, we will have no duty under Coverages A or B to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

(3)    When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

(a)    The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

(b)    The total of all deductible and self-insured amounts under all that other insurance.

(4)    We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

c.    Method Of Sharing

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

(McKenna Dec., Ex. I at SAMSUNG 00094; 56.1 at ¶ 17.)

Samsung provided all five defendants in the Underlying Action with a defense,[1] and settled on behalf of Telco of Ralph Avenue, Inc., T&E Stores, Inc., and Ralph Avenue Operating Corp. in December 2019.  (McKenna Dec., Exs. G and H; 56.1 at ¶ 54.)

### (C)    The Liberty Policy

Liberty Mutual issued Business Auto Liability Insurance Policy No. AS2-C21-004175-335, with a $5 million liability limit, to United Parcel Service, Inc. for the period January 1, 2015 to January 1, 2016 (the "Liberty Policy").  (McKenna Dec., Ex. L; 56.1 at ¶ 1.)

The Liberty Policy provides, in part:

SECTION II – LIABILITY COVERAGE

A.    Coverage

We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto".

\* \* \*

We have the right and duty to defend any "insured" against a "suit" asking for such damages or a "covered pollution cost or expense"….

(McKenna Dec., Ex. L at LMFIC 386; 56.1 at ¶ 4.)

---

[1] Zurich American Insurance Company ("Zurich"), which insured Ralph & Flatlands Associates and Flatlands Shopping Center Associates, tendered their defense and indemnification to Samsung and, by correspondence dated March 1 and March 20, 2017, Samsung accepted the tender. (McKenna Dec., Ex. J; 56.1 at ¶ 42.)  Samsung agreed to reimburse Zurich $2,330.70 in past defense costs, (McKenna Dec., Ex. K) and, thereafter, provided all five defendants with a defense in the Underlying Action.  *Id.*

The Liberty Policy defines "insured" as follows:

1.     Who Is An Insured

The following are "insureds":

a.     You for any covered "auto."

b.     Anyone else while using with your permission a covered "auto" you own, hire or borrow except:

(1)     The owner or anyone else from whom you hire or borrow a covered "auto."

This exception does not apply if the covered "auto" is a "trailer" connected to a covered "auto" you own.

(2)     Your "employee" if the covered "auto" is owned by that "employee" or a member of his or her household.

(3)     Someone using a covered "auto" while he or she is working in a business of selling, servicing, repairing, parking or storing "autos" unless that business is yours.

(4)     Anyone other than your "employees," partners (if you are a partnership), members (if you are a limited liability company), or a lessee or borrower or any of their "employees," while moving property to or from a covered "auto."

(5)     A partner (if you are a partnership), or a member (if you are a limited liability company) for a covered "auto" owned by him or her or a member of his or her household.

c.     Anyone liable for the conduct of an "insured" described above but only to the extent of that liability.

(*Id.* at LMFIC 386-387; 56.1 at ¶ 5.)

7

The Liberty Policy contains an "other insurance" provision that provides:

> 5.   Other Insurance
>
>      a.   For any covered "auto" you own, this Coverage
>           Form provides primary insurance.  For any covered
>           "auto" you don't own, the insurance provided by this
>           Coverage Form is excess over any other collectible
>           insurance….

(*Id.* at LMFIC 381.)

### (D)   Samsung's Tender and Liberty's Disclaimer of Coverage

By correspondence dated October 3, 2019, Samsung, through counsel, tendered the defense and indemnification of the Underlying Defendants to Defendant Liberty.  (McKenna Dec., Ex. M; 56.1 at ¶ 74.)  Liberty has acknowledged that Darretta was unloading the UPS vehicle at the time of his alleged accident.  More specifically, by email dated October 10, 2019, Mark T. Hart of Liberty Mutual Insurance wrote to Timothy Kemperle of UPS:

> Tim
>
> I find the enclosed interesting.  Your Package Car Driver, Joseph
> Darretta, was unloading his Package Car in Brooklyn, NY when he
> slipped/tripped over a broom resulting in injuries back on
> 7/29/2015…

(McKenna Dec., Ex. N; 56.1 at ¶ 85.)  Notwithstanding, in response to Samsung's tender, Liberty, through counsel, disclaimed coverage to all of the Underlying Defendants.  (McKenna Dec., Ex. O; 56.1 at ¶ 86.)

### (E)   The Instant Action

On May 27, 2020, Samsung commenced this declaratory judgment action in the Supreme Court of New York, New York County (Index No. 652009/2020), seeking (i) a declaration that Liberty has a duty to defend and indemnify the Underlying Defendants as insureds under the Liberty Policy on a primary and non-contributory basis; and (ii) reimbursement of the attorneys'

fees and costs incurred by Samsung in defending the Underlying Defendants in the Underlying Action.  (McKenna Dec., Ex. P; ECF Docket No. 1.)

On June 23, 2020, Liberty removed this action to the United States District Court for the Southern District of New York (McKenna Dec., Ex. Q; ECF Docket No. 1), and on July 9, 2020 Liberty filed its Answer (McKenna Dec., Ex. R; ECF Docket No. 10).

**ARGUMENT**

**POINT I**

**SAMSUNG IS ENTITLED TO SUMMARY JUDGMENT DECLARING THAT LIBERTY HAD A DUTY TO DEFEND AND INDEMNIFY THE UNDERLYING DEFENDANTS IN CONNECTION WITH THE UNDERLYING ACTION**

**(A)    Legal Standard**

Under Federal Rule of Civil Procedure 56(c)(2) ("Rule 56"), summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548 (1986).  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'"  *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348 (1986).

The party opposing the motion may not simply rest on allegations, nor may it rely on speculative or conclusory assertions.  *See Lightfoot v. Union Carbide Corp.*, 110 F.3d 898, 908 (2d Cir. 1997).  To defeat a motion for summary judgment, the opposing party must "come forward with 'specific facts showing that there is a genuine issue for trial.'"  *Matsushita, supra* 475 U.S. at 586, 106 S. Ct. at 1356.

9

In this action, Samsung entitled to summary judgment declaring that the Underlying Defendants are insureds under the Liberty Policy for the claims asserted against them by Darretta. The Liberty Policy insures bodily injury caused by an accident resulting from the use of a covered auto and includes as insureds anyone using a covered auto with UPS's permission and anyone liable for the conduct of an insured. There is no dispute that Darretta sought damages for injuries he allegedly incurred when he fell in the course of unloading a delivery truck owned by Liberty's named insured, UPS. There is also no dispute that Underlying Defendants were using the truck because Darretta was in the process of unloading it for the purpose of making a delivery to them at the time of his alleged accident. Finally, there is no genuine dispute that the Underlying Defendants' alleged liability derived from the conduct of the named insured, UPS (through its employee, Darretta, who was also an insured). Accordingly, the claim comes within the scope of the insurance afforded under the Liberty Policy, and the Underlying Defendants qualify as insureds.

**(B)    Darretta Sought Damages In Connection With An Accident Which Resulted From The Use Of A Covered Automobile**

Liberty agreed in the policy it issued to UPS to "pay all sums an 'insured' legally must pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies, caused by an 'accident' and resulting from the ownership, maintenance or use of a covered 'auto.'" McKenna Dec., Ex. L at LMFIC 386. There is no question that the UPS truck from which Darretta was unloading the packages was owned by UPS and, therefore, qualifies as a covered auto. Thus, the fact that Darretta claims he fell while on the premises to make a delivery establishes that the accident resulted from the use of the covered auto as a matter of well-established New York law.

Courts in New York have consistently held that, where an accident results from an act of loading or unloading of a covered auto, the claim comes within the scope of the auto liability

coverage as long as there is a causal connection between the accident and the movement of goods to or from the vehicle. *See, Eagle Ins. Co. v. Butts*, 269 A.D.2d 558, 707 N.Y.S.2d 115, 116 (2d Dep't 2000) (recognizing that the vehicle itself does not need to produce the injury to find coverage if the accident occurs during the loading or unloading of property from a covered vehicle); *Wausau Underwriters Ins. Co. v. St. Barnabas Hosp.*, 145 A.D.2d 314, 534 N.Y.S.2d 982, 983 (1st Dep't 1988) (noting that the proximate cause analysis focuses on "use" of the vehicle); *Argentina v. Emery World Wide Delivery Corp.*, 93 N.Y.2d 554, 558, 693 N.Y.S.2d 493 (1999) (holding that an auto policy covering liability for accidents arising out of the "ownership, maintenance or use of an automobile" includes coverage for loading and unloading operations); *Cosmopolitan Mut. Ins. Co. v. Baltimore & Ohio R.R.*, 18 A.D.2d 460, 240 N.Y.S.2d 88, 90 (1st Dep't 1963) (auto policy providing coverage for accidents arising from ownership, maintenance, or use but without express reference to loading and unloading deemed to afford loading and unloading coverage); *Paul M. Maint., Inc. v. Transcontinental Ins. Co.*, 300 A.D.2d 209, 755 N.Y.S.2d 3, 5 (1st Dept. 2002) (loading of equipment onto subcontractor's truck by subcontractor's employees was "use" of truck within meaning of subcontractor's business auto policy).

In the Underlying Action, Darretta claimed he was injured after he had begun the process of unloading packages from the UPS truck. More specifically, he parked the truck, got out on the passenger side, and walked along the side of the truck. As he turned at the back of the truck, he felt something pop in his knee. (McKenna Dec. Ex. A at 21:23-22:5, 44:8-44:19.) Thus, the underlying injury was proximately caused by the use of a covered "auto" as a matter of law and necessarily comes within the scope of the Liberty Policy's liability coverage.

**(C)     The Underlying Defendants Qualify As Insureds Under
The Liberty Policy Based Upon Their Use Of the UPS Truck**

The "Who Is An Insured" provision of the Liberty Policy liability coverage provides that UPS is an insured with respect to any covered auto, as are UPS employees such as Darretta and "[a]nyone liable for the conduct of an 'insured' described above but only to the extent of that liability."[2]  McKenna Dec., Ex. L, LMFIC 386-387.  Although the Underlying Defendants are not named on the Liberty Policy, they qualify as insureds with respect to Darretta's claims because they were receiving a delivery of packages from the UPS truck at the time of the alleged accident. *Wagman v. American Fidelity & Cas. Co.*, 304 N.Y. 490, 494, 109 N.E.2d 592 (1952) (insured includes any person "using" vehicle during loading and unloading).

The New York courts broadly interpret the term "use" in an insurance policy to include more than the mere "operation" of a covered auto.  *See Hertz Corp. v. Gov't Employees Ins. Co.*, 250 A.D.2d 181, 683 N.Y.S.2d 483, 486-87 (1st Dep't 1998).  To determine whether an insured was "using" a vehicle for purposes of coverage under an auto policy, the First Department in *Hertz* considered two factors:  (1) "whether the vehicle was operated to serve a purpose of the insured," and (2) "whether the vehicle was under the supervision and control of the insured."  *Id.* at 487.  Thus, the First Department held that an insured was using a rented van even though she "was not present in the van or continually directing its operation."  *Id.*

In this case, there is no dispute that the Underlying Defendants were receiving a delivery of packages being unloaded by Darretta.  McKenna Dec. Exs. A, E.  Like the insured in *Hertz*, the Underlying Defendants themselves were not physically engaged in the unloading operations.  However, the unloading was taking place on their premises, for their benefit.  Accordingly, they

---

[2] The Liberty Policy defines the terms "you" and "your" as "refer[ing] to the Named Insured shown in the Declarations."  (McKenna Dec., Ex. L, LMFIC 385; 56.1 at ¶ 7.)

are deemed as a matter of law to have been using the truck for purposes of qualifying as insureds under 1.b. of the Who Is An Insured provision in the policy.

> **(D)    The Underlying Defendants Also Qualify As Insureds Because Their Alleged Liability Is For The Conduct Of Another Insured**

The Underlying Defendants also qualify as insureds under paragraph 1.c. of the Who Is An Insured Provision of the Liberty Policy. Paragraph 1.c. provides that an insured includes "[a]nyone liable for the conduct of an 'insured' described [in paragraph 1.a. or 1.b.] but only to the extent of that liability." McKenna Dec., Ex. L, LMFIC 386-387. This provision is interpreted by the New York courts to mean that the liability coverage afforded under an auto policy insures any party who is vicariously liable for an insured's use of a covered automobile. *See, Dairylea Co-op., Inc. v. Rossal*, 64 N.Y.2d 1, 8-9, 483 N.Y.S.2d 1001 (1984); *Paul M. Maint., supra*, 755 N.Y.S.2d at 5. There is no genuine dispute here that any liability alleged against the Underlying Defendants in the Underlying Action would be derivative of the conduct of Darretta who, as an employee of Liberty's named insured, was also an insured under the Liberty Policy because he was using the truck with UPS's permission.

Darretta testified during his deposition that, on the day of the alleged accident, he parked his UPS truck and felt something pop in his knee as he walked to the back of the truck to make the delivery to Telco. (McKenna Dec., Ex. A at 44:8-44:13.) It is clear, therefore, that the claims asserted against the Underlying Defendants involve allegations that Darretta was injured while using the UPS truck.

The First Department's decision in *Paul M. Maint., Inc.* is directly on point. 755 N.Y.S.2d at 4. In that case, a subcontractor's employee was injured when a piece of equipment fell on him while he was loading the employer's truck. The employee asserted Labor Law claims against the general contractor, which in turn sought coverage from the subcontractor's auto liability insurer.

*Id.*  The Court determined that the general contractor qualified as an insured based upon the conduct of an insured because the employee was seeking damages for vicarious liability under Labor Law § 240 for the injuries resulting from the conduct of the subcontractor.  *Id.* at 4-5.  Thus, the general contractor was entitled to summary judgment declaring that the subcontractor's insurer was required to defend and indemnify it in the underlying litigation.  *Id.* at 5-6.

The Underlying Defendants in this case faced similar claims based upon Darretta's negligence during the process of unloading the UPS truck and must, therefore, qualify as insureds under the Liberty Policy for any vicarious liability imposed upon them in this regard.  At the very least, the claims in the Underlying Action triggered Liberty's duty to provide the Underlying Defendants with a defense.  *See, Spoor-Lasher Co. v. Aetna Cas. & Sur. Co.*, 39 N.Y.2d 875, 876, 386 N.Y.S.2d 221 (1976) (insurer must defend unless "there is no possible factual or legal basis on which [insurer] might eventually be held to be obligated to indemnify [insured] under any provision of the insurance policy"); *Cont'l Cas. Co. v. Rapid-Am. Corp.*, 80 N.Y.2d 640, 648, 593 N.Y.S.2d 966 (1993) (noting that the duty to defend is broader than an insurer's duty to indemnify, and that it is triggered where the "four corners of the complaint suggest – or the insurer has actual knowledge of facts establishing – a reasonable possibility of coverage").

## POINT II

**THE COVERAGE AFFORDED TO THE UNDERLYING DEFENDANTS UNDER THE LIBERTY POLICY IS PRIMARY TO SAMSUNG'S CGL POLICY**

The Underlying Defendants were insured during the relevant period under a Commercial General Liability policy issued by Samsung.  McKenna Dec., Ex. I.  By operation of the policies' respective other insurance provisions, to the extent any coverage is afforded to the Underlying Defendants under the Samsung Policy, such coverage applies in excess to, and does not contribute with, the $5 million in liability limits afforded under the Liberty Policy.  *See, Great Northern Ins.*

14

*Co. v. Mt. Vernon Fire Ins. Co.*, 92 N.Y.2d 682, 686, 685 N.Y.S.2d 411 (1999) (where the insured is covered by two or more policies, the insurers' duties are determined under New York law by reference to their "other insurance" clauses); *Consol. Edison Co. of New York v. Allstate Ins. Co.*, 98 N.Y.2d 208, 223 (2002) (other insurance clauses apply when two or more policies provide coverage during same period).

As discussed above, the Underlying Defendants are insureds under Coverage A of the liability coverage section of the Liberty Policy for damages that they must pay because of bodily injury caused by an accident resulting from the use of a covered auto. The insuring agreement further provides that Liberty has "the right and duty to defend any 'insured' against a 'suit' asking for such damages," unless or until the $5 million liability coverage limit is exhausted by the payment of judgments or settlements. McKenna Dec., Ex. L at LMFIC 386. This coverage for damages and defense costs is primary coverage when the auto is owned by the named insured, UPS. (*Id.* at LMFIC 381.)

There is no dispute in this case that the UPS truck from which Darretta was to unload the Underlying Defendants' packages was owned by UPS. Accordingly, the coverage afforded under the Liberty Policy is primary and Liberty is obligated to defend and pay damages on behalf of the Underlying Defendants up to the full $5 million liability limit. In contrast, the Samsung Policy provides in its other insurance clause that the coverage afforded thereunder is primary unless the loss arises out of the maintenance or use of an auto. The Samsung Policy provides, in relevant part, as follows:

4.      Other Insurance

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages A or B of this Coverage Part, our obligations are limited as follows:

\* \* \*

b.      Excess Insurance

(1)      This insurance is excess over:

(a)      Any of the other insurance, whether primary, excess, contingent or on any other basis:

\* \* \*

(iv)      If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion g. of Section I – Coverage A – Bodily Injury And Property Damage Liability.

\* \* \*

(2)      When this insurance is excess, we will have no duty under Coverages A or B to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

McKenna Dec., Ex. I at SAMSUNG 00094.

As discussed above, Darretta's claim triggers the coverage under the Auto Policy because Darretta alleged that he was injured when he slipped and fell while in the course of unloading packages from the truck. Accordingly, any coverage that may be afforded to the Underlying

16

Defendants under the Samsung Policy is excess to the primary $5 million liability limit afforded under the Auto Policy by operation the other insurance clause. *See Hartford Underwriters Ins. Co. v. Hanover Ins. Co.*, 122 F. Supp. 3d 143 (S.D.N.Y. 2015) (interpreting same other insurance language rendering coverage excess to loss arising out of maintenance or use of auto as negating contribution and manifesting intention to be excess over other insurance*); Bovis Lend Lease LMB, Inc. v. Great Am. Ins. Co.*, 53 A.D.3d 140, 855 N.Y.S.2d 459, 462 (1st Dep't 2008).

Moreover, the "other insurance" provisions in the Liberty Policy and the Samsung Policy plainly provide that Liberty must defend the Underlying Defendants in the Underlying Action, and that Samsung has no obligation to defend them until the liability limit under the Liberty Policy is exhausted. *See e.g., Hartford Underwriters Ins. Co. v. Hanover Ins. Co.*, 653 F. App'x 66, 68 (2d Cir. 2016) (interpreting Hanover policy, which stated it was excess over any other coverage "whether primary, excess, contingent or on any other basis," and further stated that it had no duty to defend "if any other insurer has a duty to defend"). Samsung is, therefore, entitled to judgment declaring that Liberty was obligated to defend the Underlying Defendants and pay damages on their behalf on a primary basis, and that any coverage afforded to the Underlying Defendants under the Samsung Policy is excess and noncontributory to the Liberty Policy coverage.

17

**CONCLUSION**

For the foregoing reasons, it is respectfully requested that this Court grant summary judgment in Samsung's favor (i) declaring that Defendant Liberty owed liability insurance coverage to the Underlying Defendants in connection with the Underlying Action; and (ii) ordering Liberty to reimburse Samsung for the amounts it incurred in defending and indemnifying the Underlying Defendants in the Underlying Action, with interest.

Dated: Melville, New York
      May 6, 2021

Respectfully submitted,

L'ABBATE, BALKAN, COLAVITA
 & CONTINI, L.L.P.


By: _John D. McKenna_____
    JOHN D. MCKENNA
Attorneys for Plaintiff
Samsung Fire & Marine Insurance Company
3 Huntington Quadrangle Suite 102 S
Melville, NY 11747
(516) 294-8844
jmckenna@lbcclaw.com
